```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

| | |
|---|---|
| **GLEN CLAYBORN, #201850,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    No. 11-2137 |
| | ) |
| **STATE OF TENNESSEE, et. al,** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
|     **Defendants.** | ) |

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Glen D. Clayborn ("Clayborn") brings this action against Defendants the State of Tennessee; Robert D. Cooper, the Attorney General for the State of Tennessee; Charles Traughber, Chairman of the Tennessee Board of Probation and Parole ("BOPP"); and James H. Austin, Patsy Bruce, Ronnie Cole, Yusuf Hakeem, Joe Hill, and Lisa Jones, Board Members of the BOPP, (collectively, "Defendants"), all individuals named in their official capacities only. (Compl., ECF No. 1.) Clayborn seeks an injunction and punitive damages for purported violations of his Fifth, Eight, and Fourteenth Amendment Rights under the

United States Constitution.[1] (Compl. ¶ 5.) On May 24, 2012 Defendants moved for Summary Judgment. ("Mot. for Summ. J.", ECF No. 38.) On September 28, 2012, Clayborn responded. (ECF No. 51.) On October 1, 2012, Defendants replied to Clayborn's response. (ECF No. 52.) Clayborn filed a First Amended Response on October 30, 2012. (ECF No. 55.) Defendants filed a Second Reply on October 31, 2012. (ECF No. 56.) Clayborn filed a Second Amended Response on November 24, 2012. ("2nd Amd. Resp.", ECF No. 62.)

For the following reasons, Defendants' Motion is GRANTED.

## I. Background

When he filed this action, Clayborn was an inmate at the West Tennessee Penitentiary Minimum Security Complex (the "WTP"), P.O. Box. 1150, Henning, Tennessee. (Compl. ¶ 2.) He was sentenced to thirty-five years in custody in 1994 and began serving that sentence immediately. (Id. ¶ 7.) He has not been convicted of any post-incarceration felonies or received any major disciplinary infractions for assault, fighting, or other violence towards fellow inmates or staff. (Id.) During his time in prison, Clayborn has obtained a G.E.D., a forklift

---

[1] Clayborn makes passing reference to "the Plaintiff's Fifth, Eighth, and Fourteenth Amendment Rights to both the State and Federal U.S. Constitution" in his Complaint. Clayborn does not cite any section of the Tennessee Constitution under which he seeks to bring a claim. The parties do not address state law claims in their briefs on Defendants' Motion for Summary Judgment. Insofar as Clayborn seeks to assert unspecified state law claims, they are waived.

2

operator's certification, and a paralegal certificate. He has completed anger-management and pre-release classes and been admitted to the Southwest Tennessee Community College. (Id. ¶ 8.)

Tennessee law provides that an inmate may be denied parole if:

> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
> (2) The release from custody would depreciate the seriousness of the crime for which the defendant stands convicted or promote disrespect for the law;
> (3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or
> (4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time.

Tenn. Code. Ann. § 40-35-503(b). Clayborn first became eligible for parole on March 15, 2001. (Defendant's Statement of Undisputed Facts ¶ 7., ECF No. 38-1.) At his initial hearing, parole was denied due to the "seriousness of the offense." (Id.); see also Tenn. Code. Ann. § 40-35-503(b)(2). Clayborn contends that his initial parole was actually denied based on his race. (2nd Amd. Resp. ¶ 7(C).) Clayborn's second parole review hearing was conducted on April 16, 2003, and parole was again denied due to the "seriousness of the offense." (Def.'s Undisp. Facts ¶ 8.) Clayborn contends that his 2003 parole was

3

actually denied based on his race. (2nd Amd. Resp. ¶ 8(D).) At Clayborn's third parole hearing on April 17, 2008, parole was again denied due to the "seriousness of the offense." (Def.'s Undisp. Facts ¶ 9.) Clayborn contends that his 2008 parole was actually denied based on his race. (2nd Amd. Resp. ¶ 9(E).)

Clayborn contends that he was convicted of second-degree murder and reckless homicide and that certain white prisoners who were convicted of the more serious offense of first-degreee murder were paroled on their first appearances before the BOPP. (Compl. ¶ 9.) Clayborn alleges that other more serious offenders, who committed "additional . . . felonious violence, post-incarceration" were similarly preferred. (Id.) (emphasis in original). Clayborn alleges that the BOPP routinely uses the statutorily prescribed factors as excuses to "deny black inmates early release at a significantly higher rate than similarly situated white inmates." (Id. ¶ 12.) The result, Clayborn contends, is that African-American inmates "serve many more years than similarly situated white prisoners with similar offenses, and worse post-incarceration records and program participation." (Id. ¶ 13.) Clayborn contends that his sentences were calculated to be served concurrently and that he is similarly situated to a group of four white prisoners who were released on parole. (2nd Amd. Resp. ¶¶ 10(F), 11(G).) The Defendants argue that Clayborn's sentences were intended to be

served consecutively and that he is not similarly situated to other offenders "because the facts and circumstances of his case are unique." (Def.'s Undisp. Facts ¶11.)

## II. Jurisdiction

Clayborn's complaint alleges that Defendants have violated his "Fifth, Eighth, and Fourteenth Amendment Rights" under the United States Constitution. (Compl. 1.) The Court has jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict

for the non-moving party.  See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'"  Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324).  Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor."  Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1).  The court does not have the duty to search the record for such evidence.  See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor.  See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive

6

determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The local rules of this district set out specific requirements that must be met by the non-moving party. The party opposing summary judgment must respond to each fact set forth by the moving party by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed. W.D. Tenn. L.R. 56.1 (b). The non-moving party must make specific citations to the record to support each contention that a particular fact is in dispute. Id. The non-moving party's failure to respond as required to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. L.R. 56.1(d).

**IV. Analysis**

Clayborn brings claims for declaratory relief and damages against the Defendants under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Although not stated as such, the Court understands these claims to be brought under 42 U.S.C. § 1983.

### A. Fifth Amendment

7

The parties do not specifically address Clayborn's Fifth Amendment claim in their summary judgment briefing. Summary judgment is appropriate because Defendants are entitled to judgment as a matter of law. The BOPP is a state entity, and the individual defendants were all named only in their official capacities as employees of the State of Tennessee. The Fifth Amendment's due process guarantees protect citizens against deprivations by the federal government only. See Wayne v. Shadowen, 15 Fed. Appx. 271, 280 n. 15 (6th Cir. 2001)("[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."). A due process claim against state or municipal officials or agencies, or against a state or municipal entity itself, must be brought under the Fourteenth Amendment, which restricts the activities of the states and their instrumentalities. Id.; Scott v. Clay County, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Defendants' Motion for Summary Judgment on Clayborn's Fifth Amendment claim is GRANTED.

### B. Eighth Amendment

The parties do not specifically address Clayborn's Eighth Amendment claim in their summary judgment briefing. Summary judgment is appropriate because Defendants are entitled to judgment as a matter of law. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.

8

CONST. amend. VIII. Clayborn alleges no facts that would allow the Court to find that excessive bail or fines have been imposed. The Sixth Circuit has explicitly held that the "denial of [a plaintiff's] parole does not implicate the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment prohibits conduct that involves the unnecessary and wanton infliction of pain...[t]he denial of parole clearly does not fall under this umbrella." <u>Carnes v. Engler</u>, 76 Fed. App'x 79, 81 (6th Cir. 2003.) Defendants' Motion for Summary Judgment on Clayborn's Eighth Amendment claim is GRANTED.

### C. Fourteenth Amendment

#### 1. Due Process

Defendants are entitled to summary judgment as a matter of law on Clayborn's Fourteenth Amendment Due Process claims. The Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To establish a due process violation, "a complainant must first show that he or she has a protected property or liberty interest in parole." <u>Settle v. Tenn. Dep't of Corr., Board of Parole</u>, No. 12-5482, 2012 U.S. App. LEXIS 23404, at *3 (6th Cir. Nov. 9, 2012.) "A liberty interest in parole eligibility derives only from state law." <u>Id.</u> The Sixth Circuit has "previously held that Tennessee law

9

has not created a liberty interest in parole eligibility." Id.; see also Tenn. Code Ann. §§ 40-28-117(a), 40-35-503(b); Wright v. Trammell, 810 F.2d 589, 590-91 (6th Cir. 1987). Because Clayborn "has no substantive liberty interest in parole, the procedures used to deny him parole cannot be challenged." Settle, 2012 U.S. App. LEXIS 23404, at *3.

### 2. Equal Protection

Clayborn does not set forth sufficient evidence to allow the Court to conclude that there is a genuine issue of material fact about the Defendants' alleged violation of his right to equal protection of the law. The Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection clause "requires that similarly situated persons be treated equally." Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir. 2005) (internal quotations omitted). To "state an equal protection claim 'a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" Brown v. Blackwell, No. 11-3133, 2011 U.S. App. LEXIS 26116, at *4 (6th Cir. Sept. 28, 2011).

The "'threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the

equal protection analysis to be applied is determined by the classification used by the government decision-makers.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006)). Clayborn agrees that the Tennessee parole guidelines are facially neutral but claims that they are applied in a discriminatory manner by the BOPP members and used as an excuse to deny parole to African-American inmates, resulting in longer sentences than those served by Caucasian inmates. (See Compl. ¶¶ 6-13.) Defendants contend that there is no disparate impact based on figures showing that African-American prisoners in Tennessee were granted parole at a slightly higher rate than Caucasian prisoners in Tennessee who committed comparable crimes over the relevant time period. (Def.'s Undisp. Facts ¶ 10.)

"Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals." Dixon v. Univ. of Toledo, 702 F.3d 269, 273 (6th Cir. 2012). If a plaintiff cannot show that individuals who received different treatment from the government were situated similarly to him, he cannot show disparate treatment within the meaning of the Equal Protection Clause. See Id.; Henderson v. Bredesen, No. 05-6402, 2006 U.S. App. LEXIS 32736, at * 5-8 (6th Cir. Oct. 30, 2006). To "be considered similarly situated," a plaintiff is "required

to show similarity in all relevant aspects of the parole decision." Henderson, 2006 U.S. App. LEXIS 32736, at *6.

Clayborn has not adduced sufficient evidence to allow the Court to find a genuine issue of material fact about whether he was similarly situated in all relevant aspects to the prisoners he alleges were preferentially treated. When the BOPP makes a decision to grant or deny parole, it is entitled to consider:

(a) The nature of the crime and its severity;
(b) The inmate's previous criminal record, if any;
(c) The inmate's institutional record;
(d) The views of the appropriate trial judge and the district attorney who prosecuted the case;
(e) The inmate's circumstances if returned to the community;
(f) Any mitigating or aggravating circumstances surrounding the offense;
(g) The views of the community, victims of the crime or their family, institutional staff, parole officers, or other interested parties;
(h) The inmate's training, including vocational and educational achievements and other training received both before and after incarceration;
(i) The inmate's employment history, his/her occupational skills, including any military experience, and the stability of his/her past employment;
(j) The inmate's past use of narcotics, or past habitual and excessive use of alcohol;
(k) The inmate's behavior and attitude during any previous experience on probation or parole and the recency of such experience;
(l) An objective advisory parole predication guideline system to adequately assess the risk an inmate poses to society and his/her potential for parole success;
(m) Any other factors required by law to be considered or the Board determines to be relevant.

(Rules of the Tennessee Board of Paroles, Chapter 1100-1-1, Rule 1100-1-1-.06, ECF No. 38-10.)

Clayborn has submitted no information about his own parole-relevant factors other than a letter stating his offenses and maximum and minimum sentences, his own two-page, unsworn statement, and a chart, prepared by his attorney, comparing five of Clayborn's parole-relevant factors to those of four Caucasian parolees. (See ECF No. 62-17; ECF No. 62-18.) For each of these four parolees, Clayborn has submitted only a parole summary report stating the parolee's offenses and minimum and maximum sentences, a parole certificate stating the conditions of release, and a letter from a District Attorney stating his opposition to each parolee's early release. (ECF No. 62-3 to 62-15.) Clayborn's submission falls far short of demonstrating that these four Caucasian parolees are situated similarly to him. Clayborn neither submits any information nor explains his failure to submit any information about other African-American or Caucasian inmates with similar offenses who were granted or denied parole during the relevant period 2001-2008. Defendants have adduced undisputed evidence that the BOPP conducted 5,835 parole review hearings for inmates of all races serving sentences for murder or manslaughter during that period. (Affidavit of Charles Traughber ¶14, ECF No. 36-1.)

Clayborn cannot show that the BOPP applied different standards to him than to any other parole-eligible inmates to whom he was similarly situated. Therefore, Clayborn cannot meet

the threshold element of disparate treatment, and Defendants are entitled to judgment on his Equal Protection claim as a matter of law.

Even if Clayborn were able to show disparate treatment, "'official action will not be held unconstitutional solely because it results in a racially disproportionate impact.'" Moore v. Detroit Sch. Reform Bd., 293 F.3d 352 (6th Cir. 2002) (quoting Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-65 (1977)). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Harris v. Warden, Ross Corr. Inst., No. 2:08-CV-1043, 2010 U.S. Dist. LEXIS 142928, at *39 (S.D. Ohio Dec. 17, 2010) (quoting Village of Arlington Heights, 429 U.S. at 264-65).

A plaintiff must "prove the existence of some purposeful discrimination" to state an equal protection claim. Henderson, 2006 U.S. App. LEXIS 32736, at * 5. Where the "defendant's decision or action is justified by legitimate, non-discriminatory grounds, there can be no equal protection violation in the absence of discriminatory intent." Id. The "plaintiff bears the burden of presenting evidence of purposeful discrimination before the burden shifts to the defendant to produce evidence that the same decision would have resulted absent the impermissible intent or purpose." Id. at *6. A

14

plaintiff's "[c]onclusory assertions unsupported by material facts are insufficient to support [an] equal protection claim." The plaintiff must provide "'such circumstantial and direct evidence of intent as may be available.'" Id. (quoting Village of Arlington Heights, 429 U.S. at 266). Sources of such evidence include "disproportionate adverse impact on one race, the 'historical background of the decision,' the 'specific sequence of events leading up to the challenged decision,' departures from procedural or substantive norms, and contemporary statements by decisionmakers." Id.

Clayborn's assertions of discriminatory intent are entirely conclusory. He presents no direct evidence that the BOPP members had a discriminatory purpose. The extent of his circumstantial evidence is his showing that his parole was denied while four Caucasian inmates who were similar in some relevant aspects were granted parole. Clayborn presents no evidence that race was a factor considered by BOPP members in any other inmate's parole review. He relies instead on his conclusory assertions that the "TBOPP uses race as the major factor in deciding whether to grant an inmate early release" and that it "den[ies] black inmates early release at a significantly higher rate than similarly situated white inmates." (Compl. ¶¶ 11-12.) Clayborn's assertions are "unsupported by any material facts" and are insufficient to shift the burden to Defendants to

show that "the same decision would have resulted absent the impermissible intent or purpose." Henderson, 2006 U.S. App. LEXIS 32736, at * 6. Clayborn cannot prove the existence of any purposeful discrimination. Therefore, Defendants are entitled to judgment on his Equal Protection claim as a matter of law.

Defendants' Motion for Summary Judgment on Clayborn's Fourteenth Amendment Due Process and Equal Protection claims is GRANTED.

V.  **Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.


So ordered this 11th day of February, 2013.

>                         s/ Samuel H. Mays, Jr.___
>                         SAMUEL H. MAYS, JR.
>                         UNITED STATES DISTRICT JUDGE